UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROMA O. AMOR,                    : CIVIL NO: 1:09-CV-01340
                                 :
            Plaintiff            :
                                 : (Judge Rambo)
      v.                         :
                                 : (Magistrate Judge Smyser)
ERIC P. DODDS, et al.,           :
                                 :
            Defendants           :


**REPORT AND RECOMMENDATION**


      The plaintiff, proceeding *pro se*, commenced this action
by filing a complaint on July 13, 2009.


      The defendants named in the complaint were: 1) Eric P.
Dodds; 2) Gerald C. Dodds; 3) Julia Dodds; 4) Kim Deibler,
identified as "Administrator Pennsylvania Interstate Compact";
5) Nancy Hardy, identified as "Deputy Director/Secretary
Pennsylvania Office of Children Youth and Family & ICPC Compact
Administrator"; 6) the County of York and its Board of
Commissioners; 7) Jerry D. Anderson, identified as "Director
York County Office of Children Youth and Families"; 8) J.
Robert Chuk, identified as "York County 19th Judicial District
Court Administrator, and its Domestic Relations Section &
Orphan Court"; 9) John H. Chronister, President Judge of the

Court of Common Pleas of York County, Pennsylvania; 10) Richard
K. Renn, Judge of the Court of Common Pleas of York County,
Pennsylvania; 11) Cheryl Hughes, identified as "York County
OCY"; and 12) Lauren Sentz, also identified as "York County
OCY." The complaint also named 15 Doe defendants.

The complaint alleged the following material facts.

Beginning in 2001, the plaintiff and defendant Eric
Dodds lived together in a quasi-marital relationship.
Defendant Dodds was physically and emotionally abusive to the
plaintiff.

The plaintiff became pregnant. Defendant Eric Dodds
and his father, Gerald Dodds, demanded that the plaintiff
terminate the pregnancy. The plaintiff did not terminate the
pregnancy. Rather, she gave birth to a child in August of
2002. The hospital kept the baby and called child welfare
officials. York County Office of Children and Youth Services
gave the baby to defendant Eric Dodds. Therefore, the
plaintiff was forced to stay with defendant Eric Dodds in order
to protect the baby from him and his family.

Defendant Eric Dodds continued to be abusive toward the plaintiff. He was also abusive toward the child. In 2003, the plaintiff moved with the child to a domestic violence shelter.

On March 31, 2003, the plaintiff and defendant Eric Dodds signed an agreement regarding custody, visitation and paternity. Pursuant to the agreement, defendant Eric Dodds voluntarily relinquished his legal right to plan or care for the child. The agreement provided the plaintiff with full legal and physical custody of the child. The agreement also contained a provision denying defendant Dodds or his family any contact with the child without the plaintiff's approval and supervision. The plaintiff and child subsequently moved to Arizona. The agreement between the plaintiff and Dodds was lodged as "an Order to abide" in November of 2004 in the Superior Court of Pima County, Arizona.

After she moved to Arizona, the plaintiff had telephone contact with defendant Dodds to inform him of the child's well being and development. However, defendant Dodds became controlling and hostile. Defendant Dodds threatened to "drop a bomb" on the plaintiff. The plaintiff perceived that she was

3

being stalked in Arizona by third parties working on behalf of defendant Dodds.  In late June or early July 2005, the plaintiff informed defendant Dodds that she was ceasing all communication with him due to his abusive conduct.  He demanded that the plaintiff obey him and do as he says and he threatened that his family "will come down on" the plaintiff.  The plaintiff informed defendant Dodds that he could not hurt her anymore.  Defendant Dodds responded: "Oh yes I can, through that boy [the child]."  On July 17, 2005, defendant Dodds sent the plaintiff a letter threatening "social workers, judges, lawyers, and courts."

Subsequently child protective services officials in Arizona began "stalking" the child.  On September 15, 2005, those officials seized the child without a court order or warrant and with no finding of non-accidental trauma or imminent danger.  The plaintiff was not provided a post-deprivation procedure to correct the error.  The officials informed the plaintiff that the child would not be returned to her because she was unable to protect the child from Dodds.  A judge in Arizona subsequently granted child protective services the discretion to allow the child to travel anywhere in the

United States.  The child was withheld from the plaintiff at an undisclosed location and the child suffered heinous abuse.  The plaintiff was initially granted twice daily unsupervised visits with the child.  However, state officials, using a "deceitful kidnapping alarm" limited the visits.

Defendant Dodds personally appeared in connection with the Arizona case.  The allegations in the complaint regarding what happened in that case are not entirely clear.  It appears that the plaintiff has alleged that at one point a judge in Arizona denied placement of the child with Dodds based on the custody agreement that Dodds had previously signed but that later the child was placed with Dodds.  The plaintiff alleges that state and local officials, including defendant Hughes and Sentz, neglected to conduct a proper investigation into the placement.

York County officials failed to monitor the child's welfare.  Based on phone conversations with the child, the plaintiff believes that the child is being abused and neglected by the Dodds.  The plaintiff's phone contact with the child was limited and she has been denied phone contact on numerous

occasions.  The plaintiff alleges that the Dodds are attempting to alienate the child from her.  Defendant Eric Dodds had the child's name legally changed to further alienate him and conceal him from the plaintiff.

In October of 2006, defendant Dodds lodged an ex parte order for child support and caused the plaintiff's social security benefits to be attached.  The plaintiff alleges that she was denied due process in connection with that attachment. In 2008, the trial court reduced the plaintiff's obligation to zero, ordered any monies held in suspense to be returned to her and order a full accounting by Dodds.  The trial court ordered a judgment in favor of the plaintiff in the amount of $2,473.10.  However, defendant Dodds has refused to pay the judgment.  The plaintiff has been unable to support herself and has nearly starved to death on more than one occasion.

On July 20, 2009, the case was referred to the undersigned for pre-trial management.  By an Order dated July 24, 2009, we reviewed the complaint pursuant to 28 U.S.C. § 1915(e)(2) and concluded that the complaint fails to state a

claim upon which relief may be granted.  We stated and reasoned

as follows:

> "Under Federal Rule of Civil Procedure
> 8(a)(2), a pleading must contain a 'short and
> plain statement of the claim showing that the
> pleader is entitled to relief.'" *Ashcroft v.
> Iqbal,* 129 S.Ct. 1937, 1949 (2009).  The
> statement required by Rule 8(a)(2) need only
> give the defendant fair notice of what the
> plaintiff's claim is and the grounds upon
> which it rests. *Erickson v. Pardus*, 127 S.Ct.
> 2197, 2200 (2007).  Detailed factual
> allegations are not required. *Bell Atlantic
> Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
> However, more is required than labels,
> conclusions and a formulaic recitation of the
> elements of a cause of action. *Id.* at 1965.
> "While legal conclusions can provide the
> framework of a complaint, they must be
> supported by factual allegations." *Ashcroft,
> supra,* 129 S.Ct. at 1950.  "When there are
> well-pleaded factual allegations, a court
> should assume their veracity and then
> determine whether they plausibly give rise to
> an entitlement to relief." *Id.*
>
> "[A] complaint must contain sufficient
> factual matter, accepted as true, to 'state a
> claim to relief that is plausible on its
> face.'" *Ashcroft, supra,* 129 S.Ct. at 1949
> (quoting *Twombly, supra,* 550 U.S. at 570).  "A
> claim has facial plausibility when the
> plaintiff pleads factual content that allows
> the court to draw the reasonable inference
> that the defendant is liable for the
> misconduct alleged." *Id.*  "The plausibility
> standard is not akin to a 'probability
> requirement,' but it asks for more than a
> sheer possibility that a defendant has acted
> unlawfully." *Id.*

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 127 S.Ct. at 2200 (2007)(quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

Construing the complaint liberally, we nevertheless conclude that the complaint does not state a claim upon which relief may be granted. The complaint does not contain a short and plain statement of the claims showing that the plaintiff is entitled to relief as required by Fed.R.Civ.P. 8(a). Rather, the complaint is unduly lengthy and convoluted. Although the complaint contains a large number of allegations, many of those allegations are in the nature of conclusions rather than of factual allegations. The complaint contains seventeen counts. Many of those counts contain references to numerous causes of action in the title of the count. However, the body of those counts for the most part, after incorporating prior allegations, merely allege in conclusory terms that the defendants violated particular laws. Given the convoluted nature of the factual allegations in the complaint, the incorporation by reference of all of those allegations into a count and an assertion that the defendants violated particular laws does not provide notice of what actions or inactions by the defendants the plaintiff is claiming violated those laws. Therefore, we conclude that the complaint fails to state a claim upon which relief may be granted.

There are additional problems with the complaint.

The complaint names as defendants Jerry Anderson and J. Robert Chuk. However, there

8

are no factual allegations in the complaint
that allege any action or inaction by Anderson
or Chuk.

The complaint names as defendants John
Chronister and Richard Renn, judges of the
Court of Common Pleas of York County,
Pennsylvania.  However, again there are no
factual allegations in the complaint that
allege any action or inaction by Chronister or
Renn.  The plaintiff does make allegations
regarding court processes and hearings, but
she does not indicate which judge was
presiding and what the judge was alleged to
have done which violated the law.

Moreover, "judges are immune from suit
under section 1983 for monetary damages
arising from their judicial acts." *Gallas v.
Supreme Court of Pennsylvania*, 211 F.3d 760,
768 (3d. 2000).  The Court has described the
reasons for recognizing judicial immunity as
follows:

> [T]he nature of the adjudicative function
> requires a judge frequently to disappoint
> some of the most intense and ungovernable
> desires that people can have.... [T]his
> is the principal characteristic that
> adjudication has in common with
> legislation and with criminal
> prosecution, which are the two other
> areas in which absolute immunity has most
> generously been provided.  If judges were
> personally liable for erroneous
> decisions, the resulting avalanche of
> suits, most of them frivolous but
> vexatious, would provide powerful
> incentives for judges to avoid rendering
> decisions likely to provoke such suits.
> The resulting timidity would be hard to
> detect or control, and it would
> manifestly detract from independent and
> impartial adjudication.

*Forrester v. White*, 484 U.S. 219, 226-27 (1988)(citations omitted).

We engage in a two-part inquiry to determine whether judicial immunity is applicable. *Gallas, supra,* 211 F.3d at 768. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Id.* (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*

"With respect to the first inquiry, 'the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'" *Gallas, supra,* 211 F.3d at 768(quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). "Our task is to 'draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges,' such as administrative acts." *Id.* (quoting *Forrester, supra,* 484 U.S. at 227).

"With respect to the second inquiry, we must distinguish between acts in the 'clear absence of all jurisdiction,' which do not enjoy the protection of absolute immunity, and acts that are merely in 'excess of jurisdiction,' which do enjoy that protection." *Id.* at 769. The Court has stated that a distinction must be observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter:

> Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of

such authority, when the want of jurisdiction
is known to the judge, no excuse is
permissible.  But where jurisdiction over the
subject-matter is invested by law in the
judge, or in the court which he holds, the
manner and extent in which the jurisdiction
shall be exercised are generally as much
questions for his determination as any other
questions involved in the case, although upon
the correctness of his determination in these
particulars the validity of his judgments may
depend.

*Stump*, *supra,* 435 U.S. at 356 n.6.

Judicial immunity shields a judge from
liability for judicial acts even if those acts
were taken in error, if they  were done
maliciously, if they were in excess of the
judge's authority, if the judge committed
grave procedural errors or if the judge's
actions were unfair or controversial.  *Gallas,
supra,* 211 F.3d at 769.  A judge will be
subject to liability only when he or she has
acted in the clear absence of all
jurisdiction. *Id.*  "In sum, our analysis must
focus on the general nature of the challenged
action, without inquiry into such "specifics"
as the judge's motive or the correctness of
his or her decision." *Id.*

There are no factual allegations in the
complaint which would indicate that defendants
Chronister and Renn were acting other than in
a judicial capacity or in the complete absence
of all jurisdiction.  Accordingly, the claims
against defendants Chronister and Renn are
barred by judicial immunity.

We also note that, given that the
plaintiff alleges events going back to 2001,
it appears from the face of the complaint that
some of her claims are barred by the statute
of limitations.  We note that the plaintiff
alleges that the instant complaint is an

amendment of two prior complaints that she
filed in the United States District Court for
the District of Arizona.  She intimates that
because she views the instant complaint as an
amendment of those prior complaints her claims
are not barred by the statute of limitations.
However, the instant complaint is not an
amendment of any prior complaints.  This is a
completely separate case.  Thus, the plaintiff
can not rely on prior cases in the application
of the statute of limitations.

The plaintiff claims violations of the 42
U.S.C. § 13981, a part of the Violence Against
Women Act of 1994 that provides a civil cause
of action.  However, in *United States v.
Morrison*, 529 U.S. 598 (2000), the United
States Supreme Court held that Congress
exceeded its authority in enacting § 13981.
Accordingly, the plaintiff can not state a
claim upon which relief may be granted based
on that section.

The plaintiff claims violations of the
Interstate Compact on the Placement of
Children (ICPC).  However, the United States
Court of Appeals for the Third Circuit has
held that the ICPC does not apply when a child
is returned to a natural parent. *See McComb v.
Wambaugh*, 934 F.2d 474 (3d Cir. 1991).  It
appears that the plaintiff is claiming
violations of the ICPC in connection with the
return of the child to Eric Dodds.  The
complaint contains allegations intimating that
Eric Dodds is the father of the child.  Thus,
the ICPC does not apply.

The plaintiff claims violations of 42
U.S.C. § 671(a) (15), part of the Adoption
Assistance and Child Welfare Act.  However,
there is no private right of action under that
section. *See Suter v. Artist M.,* 503 U.S. 347
(1992).

12

The plaintiff claims violations of the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A.  Again, however, there is no private right of action under that statute. *See Thompson v. Thompson,* 484 U.S. 174 (1988).

We also note that to the extent that plaintiff is seeking in claims in this case to overturn the decisions of the state courts, this court lacks subject-matter jurisdiction over  such claims pursuant to the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine embodies the principles set forth in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  Section 1257 of Title 28 of the United States Code confers on the United States Supreme Court appellate jurisdiction to review final judgments of the states' highest courts.  The *Rooker-Feldman* doctrine is the doctrine that, by negative implication, inferior federal courts lack subject matter jurisdiction to review final judgements of the states' highest courts. *E.B. v. Verniero*, 119 F.3d 1077, 1090 (3d Cir. 1997).  The *Rooker-Feldman* doctrine has been interpreted to also apply to final decisions of lower state courts. *Id*.  "District courts lack subject matter jurisdiction once a state court has adjudicated an issue because Congress has conferred only original jurisdiction, not appellate jurisdiction, on the district courts." *In re Gen. Motors Corp. Products Liability Litigation*, 134 F.3d 133, 143 (3d Cir. 1998).  The existence of a state court judgment in another case bars a subsequent federal proceeding under *Rooker-Feldman* "when entertaining the federal court claim would be the equivalent of an appellate review of that order." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir.

1996). "Under the *Rooker-Feldman* doctrine,
lower federal courts cannot entertain
constitutional claims that have been
previously adjudicated in state court or that
are inextricably intertwined with a state
adjudication." *Whiteford v. Reed*, 155 F.3d
671, 673-74 (3d Cir. 1998).  In other words:
> *Rooker-Feldman* precludes a federal action
> if the relief requested in the federal
> action would effectively reverse the
> state decision or void its ruling.
> Accordingly, to determine whether *Rooker-Feldman* bars [a] federal suit requires
> determining exactly what the state court
> held . . .   If the relief requested in
> the federal action requires determining
> that the state court's decision is wrong
> or would void the state court's ruling,
> then the issues are inextricably
> intertwined and the district court has no
> subject matter jurisdiction to hear the
> suit.

*Whiteford*, *supra*, 155 F.3d at 674 (quoting
*FOCUS, supra*, 75 F.3d at 849).

Thus, to the extent that plaintiff is
seeking in claims in this case to overturn the
decisions of the state courts, this court
lacks subject-matter jurisdiction over such
claims pursuant to the *Rooker-Feldman* doctrine

*Doc. 5* at 7-18 (footnote omitted).

We granted the plaintiff leave to file an amended
complaint to attempt to state a claim upon which relief may be
granted.  On September 10, 2009, the plaintiff filed an amended
complaint.

The material factual allegations of the amended
complaint are substantially the same as the material factual
allegations of the original complaint.  The amended complaint,
however, no longer names the Honorable John H. Chronister, the
Honorable Richard K. Renn or J. Robert Chuk as defendants.  The
amended complaint also no longer contains claims expressly
based on the Violence Against Women Act of 1994, the Interstate
Compact on the Placement of Children, the Adoption Assistance
and Child Welfare Act or the Parental Kidnapping Prevention Act
of 1980.  The amended complaint does name two new defendants:
1) Debra Halderman, identified as an official with the York
County Office of Children, Youth and Families; and 2) the York
County Northern Region Police Department.  The amended
complaint contains eleven counts containing claims based on 42
U.S.C. § 1983, 42 U.S.C. § 1985, the Americans with
Disabilities Act (ADA), 42 U.S.C. 12101, et seq., the Racketeer
Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.
§§ 1961-1968, Pennsylvania tort claims and claims based on the
Pennsylvania Constitution.

We conclude that the majority of the plaintiff's
federal claims are barred by the statute of limitations.

15

"Actions brought under 42 U.S.C. § 1983 are governed by
the personal injury statute of limitations of the state in
which the cause of action accrued." *O'Connor v. City of Newark,*
440 F.3d 125, 126 (3d Cir. 2006).  The Pennsylvania statute of
limitations for personal injury actions is two years. *Garvin v.
City of Philadelphia,* 354 F.3d 215, 220 (3d Cir. 2003).  Thus,
the statute of limitations applicable to 42 U.S.C. § 1983
claims is two years.  Similarly, the statute of limitations
applicable to 42 U.S.C. § 1985 claims and ADA claims is two
years. *See Lake v. Arnold*, 232 F.3d 360, 369 (3d Cir. 2000)(42
U.S.C. § 1985 claim); *Disabled in Action of PA v. Southeastern
PA Transp. Auth.,* 539 F.3d 199, 208 (3d Cir. 2008)(ADA claim).
A cause of action accrues when the plaintiff knew or should
have known of the injury upon which his action is based.
*Sameric Corp. v. City of Philadelphia,* 142 F.3d 582, 599 (3d
Cir. 1998).

     The majority of the plaintiff's claims concern events
that happened from 2002 through 2006 when the plaintiff lost
custody of her child.  There is no reasonable basis to conclude
that the plaintiff was not aware of her alleged injuries at the

time they occurred or that there would otherwise be a basis for tolling the statute of limitations in this case.

The statute of limitations is an affirmative defense and the burden of establishing its applicability generally rests with the defendant. *Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d 1153, 1161 (3d Cir. 1989). However, a complaint may be dismissed on the basis of the statute of limitations if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168, 1174 (3d Cir. 1978). Further, the court "may dismiss a complaint under § 1915 when the statute of limitations defense is obvious from the face of the complaint and no development of the factual record is required to determine whether dismissal is appropriate." *Aquino v. Saudi,* 3:CV-07-1395, 2007 WL 3005122 at *2 (M.D.Pa. 2007)(Vanaskie, J.).

In the instant case, it is obvious from the face of the complaint that the plaintiff's § 1983, § 1985 and ADA claims based on events the occurred through 2006 are barred by the

statute of limitations.  Accordingly, those claims fail to state a claim upon which relief may be granted.

The amended complaint does contain allegations regarding a few events that allegedly occurred within two years of the date that the plaintiff commenced this action.  Thus, we can not conclude that the plaintiff's § 1983, § 1985 or ADA claims based on those events are barred by the statute of limitations.  Nevertheless, the amended complaint fails to state a claim upon which relief may be granted with respect to those events.

The plaintiff alleges that in 2007 and 2008 York County Office of Children Youth and Families officials and employees including defendant Halderman refused her requests to check on her child's safety and welfare and refused to monitor the child.  She also alleges that in the late fall of 2008 defendant York County Northern Region Police Department deliberately and callously did not return her calls and hung up on her after refusing to a "well-check" of the child.  Despite the plaintiff's allegations to the contrary, there is no basis to conclude that the defendants' failure to check on the child

for the plaintiff after the plaintiff lost custody of the child violated her rights. Accordingly, the amended complaint fails to state § 1983, § 1985 or ADA claims upon which relief may be granted based on the failure of the defendants to check on the child.

The plaintiff also alleges that in October of 2006, in retaliation for her filing a civil rights action, defendant Dodds initiated a state action to deny her access to her property. From the amended complaint the nature of that action is not entirely clear. The plaintiff, however, alleges that with the aid of state agents her federal disability benefits were seized without due process. She alleges that her obligation was eventually reduced to zero, that judgment was ordered against defendant Dodds but that defendant Dodds refused to return the unlawfully seized benefits to her. The amended complaint fails to specify how the defendants allegedly violated her rights through that state action. Accordingly, we conclude that the amended complaint fails to state a claim upon which relief may be granted based on that state action.

The plaintiff also raises a RICO claim in her amended complaint. A civil RICO claim is subject to a four year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.,* 483 U.S. 143, 156 (1987). Given that the plaintiff complains about some events that happened within four years of the date she commenced this action, we can not conclude that any RICO claim is barred by the statute of limitations. Nevertheless, the amended complaint fails to state a RICO claim upon which relief may be granted.

The RICO statute provides, in pertinent part, that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). To establish a civil RICO claim, a plaintiff must establish: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, plus an injury to 'business or property.'" *In Re Insurance Brokerage Antitrust Litigation,* __ F.3d __, __ , 2009 WL 2855855 at *20 (3d Cir. Sept. 8, 2009).

20

Although the amended complaint mentions RICO, the amended complaint does not contain factual allegations which, if accepted as true, would establish the elements of a civil RICO claim. Accordingly, the complaint fails to state a RICO claim upon which relief may be granted.

The amended complaint fails to state a federal claim upon which relief may be granted and we will recommend that the federal claims be dismissed. Since we will recommend that the federal claims be dismissed, we will also recommend that the court decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3)("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if - . . . the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)(holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims).

Based on the foregoing, it is recommended that the federal claims in the amended complaint be dismissed pursuant

to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted, that the court decline to exercise supplemental jurisdiction over the state law claims and that the case be closed.


                                        */s/ J. Andrew Smyser*
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated:  September 25, 2009.